# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY IGWE, as the Administrator of the Estate of PRISCILLA L. ROBINSON | : : : : | CIVIL ACTION |
| v. | : : | NO. 16-1403 |
| JEREMY SKAGGS, *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                                                         **January 30, 2017**

      A police officer's voluntary joinder in a high speed pursuit of a suspected stolen vehicle by speeding through traffic lights and stop signs leading to a fatal car accident may so shock the conscience as to deprive the decedent of substantive due process. The officer's public employer may be liable for supervisory liability if it failed to train the officer or knowingly allowed the officers to ignore pursuit policies and training.

      But the police officer must be dismissed from civil rights liability under the doctrine of qualified immunity absent a clearly established federal right governing the officer's conduct in a police pursuit which plaintiff pleads is neither a hyperpressurized environment nor one which afforded the officer time to make unhurried judgments. There is no existing precedent placing this constitutional question beyond debate. Officers cannot be held personally liable for constitutional violations if they lack no fair warning their conduct violates the substantive due process clause. In the accompanying Order, we grant the police officer's motion to dismiss the civil rights claims against him but allow continued discovery into Pennsylvania negligence claims against the officer and his public employer's supervisory liability for a possible substantive due process violation.

## I. Pleaded facts.

Beginning at Noon on December 8, 2014, the Municipality of Monroeville ("Monroeville") police officer Jeremy Frisk followed a vehicle and called dispatch to run a check on a license plate. After a report from police dispatch the license plate did not match the description of the vehicle, Officer Frisk suspected the vehicle may have been stolen and advised dispatch he intended to stop the vehicle. The driver of the vehicle did not pull over and continued driving on the state highway. Officer Supancic, another Monroeville police officer, responded to dispatch and proceeded to provide back-up in pursuing the driver by driving through seven red lights and a stop sign. After following the vehicle into neighboring Churchill Borough, Officer Frisk radioed the driver of the suspected stolen vehicle stopped at an underpass and "was bailing out." Officer Frisk contacted dispatch for Churchill Borough police to respond, representing the driver was on the highway access ramp.

Monroeville Officer Jeremy Skaggs, also on patrol, had not been dispatched nor requested approval from dispatch to respond. He decided to voluntarily respond to Officer Frisk's location. To get there quickly, Officer Skaggs drove his 2014 Ford Explorer police car at speeds of up to 88 mph in a 35 mph zone on the wrong side of the road and drove through two red lights. Approximately three minutes after Officer Frisk began this pursuit of a suspected stolen car, Officer Skaggs entered an intersection against a red traffic signal and, after engaging his breaks for half a second, crashed into the driver's side of Priscilla Robinson's car. Fifty-year-old Priscilla Robinson died the following day from her injuries.

Officers Skaggs' employer, Monroeville, adopted a police pursuit policy but allegedly has not implemented or provided training on how its officers should operate their patrol vehicles

when responding to an incident not involving a pursuit. Ms. Robinson's husband claims Officer Skaggs was not involved in a pursuit or in an emergency response. He claims Monroeville failed to adopt policies and procedures on safely responding to incidents not involving vehicle pursuit or an emergency. Alternatively, even if we find Officer Skaggs involved in a police pursuit, Monroeville failed to train and supervise its officers by allowing its established Pursuit Policy relating to travelling through intersections to be routinely ignored without disciplinary or corrective action. Ms. Robinson's husband also alleges Monroeville acquiesced to a custom and practice of its officers routinely ignoring or running over its Opticom transponder which signals traffic lights to change color in favor of the direction travelled by an officer.

**II. Analysis**

Ms. Robinson's husband Anthony Igwe alleges a § 1983 substantive due process claim under the state-created danger theory against Officer Skaggs and a *Monell* claim against Monroeville for failure to train and supervise, as well as state law claims of negligence against Officer Skaggs and negligence and vicarious liability against Monroeville.[1]

Officer Skaggs and Monroeville move to dismiss the § 1983 claims arguing Mr. Igwe fails to state a claim for a Fourteenth Amendment substantive due process claim because Skaggs' conduct does not "shock the conscience;" even if Mr. Igwe sufficiently pleaded a substantive due process claim, Skaggs is entitled to qualified immunity; Mr. Igwe fails to state a *Monell* claim against Monroeville; and Igwe's claim for punitive damages against Monroeville must be dismissed.[2]

## A. Mr. Igwe alleges a plausible substantive due process claim.

Applying a motion to dismiss standard, our analysis of Mr. Igwe's claim against Officer Skaggs begins with whether he sufficiently alleges Officer Skaggs deprived a constitutional right.[3] Bringing his claims under 42 U.S.C. §1983, Mr. Igwe alleges a Fourteenth Amendment substantive due process claim under the state-created danger theory.

Our Court of Appeals, most recently in *L.R. v. School District of Phila.*,[4] identified the elements necessary to plead a state-created danger claim:

1. the harm ultimately caused was foreseeable and fairly direct;

2. a state actor acted with a degree of culpability that shocks the conscience;

3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[5]

Officer Skaggs primarily focuses his argument on the second element, arguing his conduct does not "shock the conscience" as a matter of law.[6] To satisfy the second element of a state-created danger claim, the state actor's culpability must "shock the conscience." The Supreme Court's decision in *County of Sacramento v. Lewis* provides the starting point for our culpability analysis.[7] In *Lewis*, the Court addressed the standard of culpability of a law enforcement officer for violating substantive due process in a pursuit case. We know from *Lewis* an actor's negligent conduct under traditional tort law generally does not give rise to a constitutional claim, as the Court recognized its earlier holdings "reject[ing] the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have

held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."[8] The Court recognized conduct at "the other end of the culpability spectrum . . . would most probably support a substantive due process claim" where the conduct intended to injure the plaintiff.[9] In the context of a high-speed chase, *Lewis* held only an "intent to harm" could shock the conscience sufficient to give rise to liability under a § 1983 Fourteenth Amendment claim.[10]

*Lewis* opened the door to a middle range of conscience-shocking culpability; conduct that is "something more than negligence but less than intentional conduct, such as recklessness or gross negligence."[11] After *Lewis*, our Court of Appeals addressed the level of conscience shocking conduct necessary in substantive due process and state-created danger cases culminating in *Sanford v. Stiles*.[12] *Sanford* held the level of culpability required to shock the conscience increases as the time a state actor has to deliberate decreases.[13] On one end of the spectrum are "hyperpressurized environments," such as a high-speed police chase, where there is no time for deliberation. There, "intent to cause harm" is required.[14] On the other end of the spectrum are cases where there is time for deliberation and a state actor has time to make "unhurried judgments."[15] There, "deliberate indifference" is sufficient.[16] Recognizing circumstances where there is less than a "split-second" decision but more than an "unhurried judgment," our Court of Appeals held the standard for conscience shocking conduct in a state-created danger case is whether the state actor "consciously disregarded a great risk of harm."[17]

Officer Skaggs asserts the higher "intent to harm" standard is applicable because he believed he was responding to an emergency and Igwe fails to allege such intent.[18] We read Mr. Igwe's Second Amended Complaint as alleging Officer Skaggs "consciously disregarded a great

5

risk of harm" standard articulated in *Sanford*.[19] Mr. Igwe alleges Officer Skaggs "consciously disregarded a substantial risk that great harm would result from his conduct" and asks we apply this lesser standard to the culpability prong of the state-created danger test.[20]

Citing this mid-level culpability standard, Mr. Igwe alleges Officer Skaggs was not involved in a high-speed chase the day of the accident and, having voluntarily undertaken the pursuit, had a reasonable three minute opportunity to deliberate.[21] Mr. Igwe alleges Officer Skaggs, against Monroeville's policy, voluntarily joined the pursuit of the suspect despite Officer Supancic's dispatch as "secondary unit;" failed to advise dispatch he intended to provide assistance until he approached the intersection where the accident occurred; failed to obtain approval from a pursuant supervisor before joining the pursuit in violation of Monroeville's policy; failed to comply with Monroeville's "Pursuit" and "Emergency Response" policies as well as Pennsylvania law on pursuits and emergency vehicles; drove his police car at a high rate of speed in the area of a retail shopping area; entered an intersection against a red traffic signal; and outran the Opticom safety system, all of which evidences Skaggs "consciously disregarded a substantial risk that great harm would result from his conduct."[22]

Taking Mr. Igwe's allegations as true and applying the mid-level culpability standard, the allegations give rise to a plausible claim under a state-created danger theory. The thrust of Mr. Igwe's allegations focuses on Officer Skaggs' decision to *voluntarily* assume a role as a responding officer in violation of Monroeville policy, knew he could terminate his response at any time, and drove his police car in reckless disregard for the safety of the general public. While Mr. Igwe provides us with no authority, nor could we find any, where this alleged conduct shocks the conscience and thus requires we dismiss Officer Skaggs under qualified immunity, we

6

cannot find Mr. Igwe's allegations could never state a substantive due process claim at this preliminary stage. At this stage, we address only whether Mr. Igwe pleaded Officer Skaggs consciously disregarded a great risk of harm by voluntarily joining a police pursuit including over-running several red lights. Until we review the discovery, we defer to Mr. Igwe's allegation of either no need to pursue or a limited emergency. Under this rubric, Officer Skaggs' speeding through traffic lights in a voluntary pursuit of a suspect leaving his vehicle may shock the conscience.

We are aware of presently inapposite analysis informed by discovery in *Leddy v. Twp. of Lower Merion*[23] and *Suarez v. City of Philadelphia*[24] to support insufficient conscience shocking behavior. In *Leddy*, defendant police officer, responding to a non-emergency radio call at an excessive rate of speed, struck and injured another motorist. Plaintiff brought a § 1983 substantive due process claim against the officer.[25] In *Leddy's* circumstances, the police officer responded to a non-emergency call, but one requiring immediate attention with no time to make "unhurried judgments."[26] On summary judgment, the district court applied mid-level culpability and found the officer's conduct driving at a high speed without lights and sirens "while not condonable, cannot be said to have shocked the conscience," and while his "high rate of speed on a crowded roadway may well have been negligent and conceivably reckless, [it] cannot be characterized as constitutionally conscience shocking."[27]

In *Suarez*, plaintiff brought a § 1983 state-created danger and negligence action against a paramedic who, while responding to an emergency call, hit plaintiff's decedent. There, the paramedic drove his vehicle, with lights and siren activated, the wrong way down a one way street. On summary judgment, the district court found the culpability standard articulated by our

7

Court of Appeals for medical personnel responding to an emergency as "consciously disregarded, not just a substantial risk, but a great risk that serious harm would result."[28] The district court concluded "[c]ourts have not found conscience-shocking behavior even when officers traveled at high speeds without warning lights or sirens activated or ran through red lights."[29]

Mr. Igwe argues the district courts in both *Leddy* and *Suarez* dismissed the claims after discovery and argues "what [Skaggs] ultimately knew is something that needs to be explored during discovery." We accept as true Igwe's allegations Skaggs voluntarily assumed the role of responding officer and drove at excessive speeds in violation of Monroeville policy and Pennsylvania law; his response should have been "non-emergency;" he outran the Opticom system; and entered an intersection against a red light crashing into Ms. Robinson. The fact question is whether, under the mid-level culpability standard, there is evidence of conscience shocking conduct beyond mere negligence.[30] At this pleading stage, we cannot summarily dismiss Mr. Igwe's substantive due process claim.

### B. Officer Skaggs is entitled to qualified immunity.

Even assuming Mr. Igwe plausibly pleads a potential substantive due process claim, Officer Skaggs is entitled to qualified immunity from civil rights liability and damages.

Our qualified immunity analysis involves two steps: "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct," here, December 8, 2014.[31] At this preliminary stage, "qualified immunity will be upheld… only when the immunity is established on the face of the complaint."[32]

Qualified immunity protects officers in a police pursuit acting in an objectively reasonable manner. Officer Skaggs' subjective motives are not material, although the information known to him may affect our substantive due process analysis. The Supreme Court describes qualified immunity as a "fair warning" standard: if the federal law is clearly established, the officer is on notice his conduct violative of federal law may lead to liability. Police officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."[33]

Having found Mr. Igwe pleads a plausible substantive due process claim, we now must determine whether this substantive due process right was "clearly established" when Officer Skaggs decided to join a police pursuit on December 8, 2014.[34] "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[35] The Supreme Court does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[36]

A clearly established right is not defined "at a high degree of generality."[37] Earlier this month in *White*, the Supreme Court again reminded district courts we must identify a case where an officer acting under similar circumstances violated the Constitution to defeat qualified immunity.[38] While our Court of Appeals defined the high standards in a hyperpressurized police pursuit, we are aware of no controlling precedent applying when an officer decides to join in a police pursuit and whether he has time to deliberate.[39]

A clearly established right is not defined by the state actors' internal guidelines and policies. We are guided by the Supreme Court in a failure to intervene in a prisoner suicide case, *Taylor v. Barkes*, where the agency issued specific policies which may not have complied with

9

the latest standards and did not act with all the information available to the state actor. Our Court of Appeals found fact disputes about whether the state actors violated a constitutional right to the proper implementation of adequate suicide prevention protocols based on deviation from internal and national policies and guidelines. The Court of Appeals found a clearly established right, although other courts of appeals disagreed, if officials know or should know of the particular vulnerability to an inmate suicide, then they must not "act with reckless indifference to that vulnerability."[40] The Supreme Court reversed, first finding the Court of Appeals' general standard did not identify the procedures to be used to identify "vulnerable inmates, let alone specify what procedures would suffice." Even aside alleged shortcomings in the agency's protocols, the Supreme Court held there was no precedent clarifying the petitioner's conduct contravening clearly established law and violating the Constitution.[41]

As conceded by the absence of authority in the parties' briefs, we are unaware of any existing precedent giving fair warning to Officer Skaggs deciding to join an ongoing high speed police pursuit as to his substantive due process liability. We have no guidelines in clearly established law. As in *Taylor*, we have a general standard with no clearly established law. We have general guidance from the Supreme Court in *Lewis* and our Court of Appeals in *Sanford* regarding the officer's potential mid-level culpability depending on the immediacy of the need for police action and generally directing a test focusing on whether he "consciously disregarded a great risk of harm" in circumstances where there is less than a "split-second" decision but more than an "unhurried judgment." But this general test does not define the procedures or conduct permissible when deciding to join a police pursuit. Officer Skaggs has no clearly established caselaw advising when he can decide to join a high speed police pursuit during the course of his

police duties. As in the Fourth Amendment context in *White,* this case of an allegedly voluntary joinder into an ongoing police pursuit presents a unique set of facts and circumstances.[42] Also, unlike the Court of Appeals for the Tenth Circuit's decisions in *Browder v. Casaus*[43], the parties do not dispute Officer Skaggs acted within the scope of his police duties and did not speed for personal purposes.

Counsel has not shown, and we are not aware, of any clearly established federal constitutional right contravened by Officer Skaggs' deciding to join a police pursuit and, through violating state driving laws, causing fatal harm to Ms. Robinson. Absent a clearly established federal constitutional right, Mr. Igwe may seek damages under state law claims but Officer Skaggs is immune from civil rights liability.

### C. Mr. Igwe states a claim for Monroeville's *Monell* liability.

While Officer Skaggs is entitled to qualified immunity from the § 1983 substantive due process claim, our Court of Appeals requires we independently review Monroeville's liability in the context of a substantive due process claim for injuries sustained in high-speed police chases.[44] The Court of Appeals adopts this independent standard with the understanding "[a] municipality would escape liability whenever the conduct of the acting police officer did not meet the 'shocks the conscience' standard, even though municipal policymakers, acting with deliberate indifference or even malice, implemented a policy which dictated his injury-causing actions."[45]

Mr. Igwe's claims arise directly from injuries arising out of a high-speed police pursuit. Our Court of Appeals holds, in the police pursuit context, a municipality may be held independently liable "for a substantive due process violation even in situations where none of its

11

employees are liable."⁴⁶ Monroeville can independently violate the Constitution if it "has a policy, practice or custom of deliberate indifference that causes the deprivation of some constitutional right through the actions of an officer, the 'causal conduit.'"⁴⁷

Mr. Igwe alleges Monroeville had a policy, practice or custom resulting in it being deliberately indifferent to a serious risk of Officers Skaggs, Supancic or others of depriving other individuals of their life or liberty interest. An officer depriving an individual of such an interest may act as a conduit through which Monroeville caused constitutional harm.⁴⁸ We recognize our Court of Appeals' view in *Fagan* is not followed by other Courts of Appeals,⁴⁹ but we are guided by our Court of Appeals and its specific direction the "[c]ity's policymakers, with a wealth of information available to them, are fully aware of those dangers but deliberately refuse to require proper training. The officer may escape liability because this conduct did not 'shock the conscience.' It does not follow, however, that the city should also escape liability. The city caused the officer to deprive the plaintiff of his liberty; the city therefore has violated the plaintiff's Fourteenth Amendment rights."⁵⁰

Mr. Igwe specifically alleges Monroeville, while implementing a pursuit policy, did not implement or provide training on how its officers should operate their police cars when responding to an incident which does not involve pursuit. He further alleges, even if they were in a high-speed police pursuit, the officers through custom and habit, routinely ignore Monroeville's written pursuit policy and Monroeville does not supervise, enforce or discipline officers who "routinely flouted and ignored the written policies with impunity . . .."⁵¹ Igwe also pleads Monroeville's § 1983 *Monell* liability extends to failing to implement a policy which established the maximum speed of which it was safe for police vehicles to approach an Opticom

controlled intersection to ensure the Opticom system operated as designed. Igwe further pleads Monroeville failed to train its officers to proceed at an appropriate speed to guarantee the Opticom system would pre-empt the traffic signal and turn the signal green in favor of the emergency vehicle as it approached the intersection. Igwe specifically pleads Officer Supancic proceeded through at least seven (7) intersections against red traffic signals and Officer Skaggs proceeded through at least two (2) intersections against red traffic signals and, as of December 8, 2014, Monroeville had exhibited a custom and practice of acquiescing such conduct resulting in a failure to properly supervise and arguing Monroeville's conduct is deliberately indifferent to Ms. Robinson's life and well-being. These specific allegations under our Court of Appeals' guidance in *Fagan,* require further discovery into Igwe's *Monell* supervisory liability claim against Monroeville.

### D. Igwe's state law claims may proceed through discovery.

Mr. Igwe brings state law claims for negligence and vicarious liability against Skaggs and Monroeville, as well as state law claims against the Global Traffic Defendants. Skaggs and Monroeville ask us to decline jurisdiction over the state law claims. We will not do so at this time but, should discovery uncover no evidence shocking the conscience or excusing the remaining federal claim for § 1983 supervisory liability, we will do so and then decline to exercise supplemental jurisdiction over these remaining claims under 28 U.S.C. § 1367(c)(3).[52]

### III. Conclusion

As pleaded, Officer Skaggs' conduct during the police pursuit may so shock the conscience under the mid-level culpability standard as to violate Ms. Robinson's substantive due process. The ongoing discovery will reveal whether Officer Skaggs' three minute pursuit

sufficiently shocks the conscience. At this stage, Mr. Igwe has also sufficiently pleaded Monroeville's § 1983 *Monell* liability for this alleged deprivation of substantive due process. But, as a matter of law and the undisputed facts, Mr. Igwe cannot plead around Officer Skaggs' qualified immunity under § 1983. He also admittedly cannot state a claim for punitive damages against Monroeville under § 1983.

---

[1] Mr. Igwe alleges state law strict product liability and negligence claims against Defendants Global Traffic Technologies, LLC and Global Traffic Technologies, Inc. (collectively "Global Traffic"). Igwe alleges Global Traffic designed, manufactured, sold and distributed the Opticom priority control system. Igwe alleges Monroeville equipped police officers' vehicles with an Opticom transponder which signals traffic lights to change color in favor of the direction travelled by an officer. Igwe alleges Skaggs "out ran" the Opticom system, forming the basis, in part, of his strict liability and negligence claims against Global Traffic. Global Traffic answered the Second Amended Complaint and cross-claimed against Skaggs and Monroeville for contribution and indemnification (ECF Doc. No. 36). Igwe's claims against Global Traffic and the crossclaims are not before us today.

[2] Mr. Igwe concedes Monroeville is not liable for § 1983 punitive damages under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). We dismiss this §1983 punitive damages claim in the accompanying Order.

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.,* 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629

F.3d 121, 130 (3d. Cir. 2010).

[4] 836 F.3d 235 (3d Cir. 2016).

[5] *L.R.*, 836 F.3d at 242 (citing *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006)).

[6] Officer Skaggs argues Igwe fails to sufficiently plead the other three elements needed for a state-created danger theory. At this preliminary stage, we disagree based on a fair reading of the Second Amended Complaint. The central issue today is whether Officer Skaggs' conduct shocks the conscience based on the pleaded facts.

[7] 523 U.S. 833 (1998).

[8] *Id.* at 848-49.

[9] *Id.* at 849.

[10] *Id.* at 854.

[11] *Id.* at 849 (internal quotations omitted).

[12] 456 F.3d 298 (3d Cir. 2006).

[13] *Id.* at 309.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* at 310.

[18] Resolution of what Skaggs believed or his intent in responding to Officer Frisk's location is not appropriate at the motion to dismiss stage. Skaggs asks we treat his motion to dismiss as one for summary judgment and consider his Declaration swearing he believed he was responding to an emergency at the time of the accident. Brief at 7, n.1 (ECF Doc. No. 35). We declined to do so in our January 7, 2017 Order (ECF Doc. No. 42).

[19] ECF Doc. No. 33 at ¶ 107. We disagree with Skaggs' assertion Igwe "has not pled" the relevant standard is "consciously disregarded a great risk of harm" and instead pleaded the lowest culpability standard of "subjective deliberate indifference." Brief at 10. Igwe alleges

15

Skaggs "consciously disregarded a substantial risk that great harm would result from his conduct." ECF Doc. No. 33 at ¶ 107. In his response brief, Igwe also argues the "conscious disregard of a great risk of serious harm" standard of culpability set out in *Sanford*.

[20] Mr. Igwe concedes the applicable standard in a high-speed chase is intent to harm, a standard he characterizes as "unattainable" and one neither he nor any plaintiff will ever be able to prove. Response brief at 6, n.1 (ECF Doc. No. 39).

[21] ECF Doc. No. 33 at ¶ 100.

[22] ECF Doc. No. 33 at ¶¶ 86-108.

[23] 114 F.Supp. 2d 372 (E.D. Pa. 2000).

[24] C.A. No. 10-426, 2011 WL 6258232 (E.D. Pa. Dec. 15, 2011).

[25] *Leddy* was not a state-created danger case, but applied *Lewis* and our Court of Appeals' decisions in *Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999) and *Nicini v. Morra*, 212 F.3d 798 (3d Cir. 2000). Our Court of Appeals in *Sanford* relied on the reasoning of *Miller* and *Nicini*.

[26] *Leddy*, 114 F.Supp. 2d at 376.

[27] *Id.*

[28] *Suarez*, 2011 WL 6258232 at *4 (citing *Rivas v. City of Passaic*, 365 F.3d 181, 196 (3d Cir. 2004) and *Brown v. Commonwealth of Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473 (3d Cir. 2003)).

[29] *Suarez*, 2011 WL 6258232 at *5.

[30] *Sanford*, 456 F.3d at 311.

[31] *L.R. v Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

[32] *Leveto v. Lapina,* 258 F.3d 156, 161 (3d Cir. 2001).

[33] *Maciarello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

[34] *See L.R.*, 836 F.3d at 247.

[35] *Taylor v. Barkes*, __U.S. ___, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015) (quoting *Reichle*

*v. Howards*, 566 U.S. 658, ___, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)).

[36] *Mullinex v. Luna*, ___ U.S. ___, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741(2011)).

[37] *White v. Pauly*, ___S.Ct. ___, No. 16-67, 2017 WL 69170, *4 (Jan. 9, 2017) (quoting *Ashcroft*, 563 U.S. at 742).

[38] *White,* 2017 WL 69170 at *5 (Fourth Amendment violation).

[39] *See e.g. Green v. Post*, 574 F.3d 1294, 1309-10 (10th Cir. 2009).

[40] *Taylor*, 135 S.Ct. at 2045 (quoting *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 669 (1988)).

[41] 135 S.Ct. at 2045.

[42] *White*, 2017 WL 69170 at *5.

[43] No. 16-2092, 2017 WL 104449, *5 (10th Cir. Jan. 11, 2017) (affirming district court's denial of officer's motion for summary judgment based on qualified immunity where officer caused a fatal accident when he had approximately eight minutes to deliberate to decide to speed through intersections for his personal reasons after work); *Browder v. Casaus*, 787 F.3d 1076 (10th Cir. 2015) (*Browder I*) (affirming district court's denial of officer's motion to dismiss based on qualified immunity).

[44] *Fagan v. City of Vineland,* 22 F.3d 1283, 1296 (3d. Cir. 1994). *Fagan* appears to be limited to police pursuit cases, as present today. *Estate of Thomas v. Fayette County,* No. 14-551, 2016 WL 3639887, *15-16 (W.D.Pa. July 8, 2016).

[45] *Id.*

[46] *Brown v. Commw. of Pa. Dep't of Health Emergency Med. Servs. Training Inst.,* 318 F. 3d 473, 482 (3d. Cir. 2003) (citing *Fagan*, 22 F. 3d at 1292).

[47] *Washington-Pope v. City of Phila.,* 979 F. Supp. 2d 544, 576 (E.D. Pa. 2013) ("*Washington-Pope I*"). Two years after her opinion denying the City's summary judgment motion on plaintiff's *Monell* claim, Judge Pratter considered the City's second motion for summary judgment on the *Monell* claim. *Washington-Pope v. City of Phila.*, No. 12-4300, 2015 WL 7450522 (E.D. Pa. Nov. 24, 2015). Judge Pratter noted no meaningful changes in the Law since her 2013 opinion and reiterated *Washington-Pope I*'s explanation of *Fagan*: a municipality can independently violate the Constitution if an officer is a "causal conduit" of the municipality's policy, practice or custom. *Washington-Pope*, 2015 WL 7450522, at *9.

[48] *See Washington-Pope,* 979 F. Supp. 2d at 576.

[49] *Id.* at n.17 (collecting cases). *See also Vanderklok v. United States*, 140 F.Supp.3d 373, 387, n.12 (E.D. Pa. 2015) (explaining *Fagan's* application in high-speed chases); *Brown v. Novacek*, No. 14-988, 2014 WL 5762952, *7-*8 (M.D. Pa. Nov. 5, 2014) (on motion to dismiss, allowing plaintiff to amend complaint to allege a *Monell* claim under *Fagan* for claims against city where police officer who, while driving on a personal errand permitted by official policy, struck and killed a pedestrian while allegedly speeding and distracted by texting, recognizing the law in this circuit "does not require a plaintiff to show a constitutional violation on the part of the individual employee in substantive due process failure-to-train claims based on Section 1983.")

[50] *Fagan,* 22 F. 3d at 1292.

[51] ECF Doc. No. 33, ¶ 131.

[52] *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).